UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
WE SHALL OVERCOME FOUNDATION and       :        16cv2725(DLC)
BUTLER FILMS, LLC, on behalf of        :
themselves and all others similarly    :        OPINION AND ORDER
situated,                              :
                                       :
                    Plaintiffs,        :
                                       :
          -v-                          :
                                       :
THE RICHMOND ORGANIZATION, INC. (TRO   :
INC.) and LUDLOW MUSIC, INC.,          :
                                       :
                    Defendants.        :
                                       :
-------------------------------------- X

APPEARANCES:

For the Plaintiffs:
Paul LiCalsi
Ofer Reger
Robins Kaplan LLC
601 Lexington Ave, Suite 3400
New York, NY 10022

For the Defendants:
Mark C. Rifkin
Randall S. Newman
Gloria K. Melwani
Wolf Haldenstein Adler Freeman & Herz LLP
270 Madison Ave, 10th Floor
New York, NY 10016

DENISE COTE, District Judge:

    The defendants The Richmond Organization, Inc. ("TRO") and

its subsidiary and imprint Ludlow Music, Inc. ("Ludlow")

(collectively, the "Defendants") possess two copyrights in the

musical composition "We Shall Overcome" (the "Song") registered

with the Copyright Office in 1960 and 1963.  The Plaintiffs We Shall Overcome Foundation ("WSOF") and Butler Films, LLC ("Butler") (collectively, the "Plaintiffs") challenge through this putative class action the Defendants' copyright in the Song.  The Plaintiffs contend, inter alia, that the lyrics to the first verse of the Song are virtually indistinguishable from a song in the public domain.

The Defendants have brought a motion to dismiss at least that portion of the amended complaint that challenges their protectable copyright interest in the lyrics to the first verse of the Song, and to dismiss as well each of the Plaintiffs' state law claims.[1]  The Defendants contend that their possession of a copyright registration is prima facie evidence of the validity of their copyright in the Song and that the Court should decide as a matter of law that the changes made to the lyrics in its first verse from the version in the public domain reflect sufficient originality to warrant a copyright in the derivative work.  They assert that those changes include substituting We for I, Shall for Will, and Deep for Down.  For the following reasons, the motion to dismiss is denied as to the

---

[1] The Defendants contend that their copyright in the Song exists in the music alone, the lyrics alone, and in their combination as an arrangement.  They bring this motion, however, only as to the lyrics contained in the first verse of the Song.

2

claims under the Copyright Act.  The motion to dismiss the state law claims is granted on the basis of preemption.

**BACKGROUND**

The following facts are derived from the complaint, together with its exhibits and documents integral to the complaint.

Origins of the Song

The Song is derivative of a song strongly associated with the Civil Rights movement in the United States and, according to the Library of Congress, "the most powerful song of the 20th Century."  The Song originated as an African-American spiritual. The first known printed reference to that spiritual, then called "We Will Overcome," is in a February 1909 edition of the United Mine Workers Journal.  In the 1940s, the spiritual was used as a protest song by striking tobacco workers in Charleston, South Carolina.

In 1945, American folk singer Pete Seeger ("Seeger") and others founded People's Songs, Inc. to "create, promote, and distribute songs of labor and the American people."  It published both the lyrics and music to the spiritual in the September 1948 edition of People's Songs magazine.  The authors are listed as the "FTA-CIO Workers Highlander Students."  The magazine notes that the song "was learned by Zilphia Horton of

the Highlander Folk School, in Tennessee, from members of the
CIO Food and Tobacco Workers Union. . . . It was first sung in
Charleston, S.C., and one of the stanzas of the original hymn
was 'we will overcome.'"[2]  The lyrics of the composition, as
published, read:

> We will overcome
> We will overcome
> We will overcome some day
> Oh down in my heart, I do believe
> We will overcome some day

During the 1940s and 50s, the words of the hymn changed and
new verses were added.  As described by Seeger in a 1993 book,
"[n]o one is certain who changed 'will' to 'shall.'  It could
have been me with my Harvard education.  But Septima Clarke, a
Charleston schoolteacher . . ., always preferred 'shall.'  It
sings better."  Seeger also discussed the origins of the Song in
the liner notes of a 1998 Smithsonian Folkways phonograph
record:

> "The song was probably adapted from the 19th century
> hymn 'I'll Be All Right,' . . . .  In any case,
> Zilphia Horton of the Highlander Folk School in
> Tennessee heard Black tobacco workers singing it on a
> picket line in 1946.  According to Pete, one of those
> workers, Lucille Simmons, changed the 'I' to 'we.'  .
> . . Zilphia Horton added some verses and taught it to
> Pete in 1947 and Pete added other, less union-specific
> verses. . . . According to Pete, 'This song
> undoubtedly has many meaning[s] to many people . . . .

---

[2] The copyright for the September 1948 edition of <u>People's Songs</u>
expired in 1976 and was never renewed.

The very best verse was made up in Montgomery,
Alabama, the city of the 1956 bus boycott: 'We are not
afraid – today!' . . . . Without this verse none of
the other verses could come true."

In 1959, Vanguard Records released a phonograph record on

which the Robert DeCormier Chorale performed "We Shall

Overcome."  Cherry Lane Music, Inc. registered a copyright for

the sheet music for that record, including "We Shall Overcome."

The deposit copy of the sheet music includes the following

lyrics:

       We shall overcome
       We shall overcome
       We shall overcome some day
       Oh deep in my heart I do believe
       We'll overcome some day

The Summer 1960 volume of Seeger's magazine, <u>Sing Out! The</u>

<u>Folk Song Magazine</u>, published the lyrics, but not the music, of

"We Shall Overcome" in the form claimed by the Defendants'

copyright.  They were recited in a story authored by Irwin

Silber.[3]  The lyrics were printed as:

       We shall overcome,
       We shall overcome,
       We shall overcome some day;
       Oh, deep in my heart,
       I do believe,

---

[3] A copyright notice for the volume as a collective work, listing
"SING OUT, Inc." as the author, was registered by <u>Sing Out!</u> on
June 1, 1960.  There was no separate copyright notice for the
lyrics.

We shall overcome some day.

In his article, "He Sings for Integration," Silber described the folk singer Guy Carawan as leading audiences in this "old hymn of hope and determination."  Carawan was quoted as stating that "'We Shall Overcome' is easily the most popular song of the integration struggle."

<u>Copyright Registrations</u>

On October 27, 1960, Defendant Ludlow filed a copyright application for a musical composition entitled "We Shall Overcome."  The application, filed on a Form E, was for a previously unpublished derivative work.[4]  The application for registration listed Zilphia Horton, deceased, Frank Hamilton, and Guy Carawan as authors of "New words & music Arrangement." In response to the instruction inquiring "[i]f a claim to copyright in any substantial part of this work was previously registered in unpublished form," the application identified a work registered under the title "I'LL OVERCOME."  In response to the instruction that the applicant "give a brief, general statement of the nature of any substantial new matter in this version," the application reported, "Melody has been changed. Harmonization wholly original.  Verses 2, 3, 4 of lead sheet

---

[4] A renewal application was filed on June 27, 1988.

6

attached all original."  The copyright was registered as No. EU645288.

The deposit copy for the work covered under Reg. No. EU645288 contains five verses.  The first and fifth verses both read:

> We shall overcome
> We shall overcome
> We shall overcome some day
> Oh deep in my heart, I do believe
> We shall overcome some day

On October 8, 1963, Ludlow filed another copyright application for "We Shall Overcome" as a derivative work.[5]  The application, again filed on a Form E, identified Zilphia Horton, Frank Hamilton, Guy Carawan, and Pete Seeger as authors of "New words and music adaption."  The application identified the "new matter in this version" as "Arr. for voice and piano with guitar chords plus completely new words in verses 6, 7, and 8.  The addition of Pete Seeger's name to writer credits is new."  The first five verses on the deposit copy are identical to that for the work covered under Reg. No. EU645288.  The copyright was registered as No. EP179877.

In 1993, Seeger explained the reason for seeking a copyright: "In the early '60s our publishers said to us 'If you

---

[5] A renewal application was filed on February 20, 1991.

don't copyright this now, some Hollywood types will have a version out next year like "Come on Baby, We Shall overcome tonight.'"  So, Guy [Carawan], Frank [Hamilton], and I signed a 'songwriter's contract.'"

Post-Registration Publications

The Plaintiffs identify several instances in which the lyrics to "We Shall Overcome" were published after the copyright registrations were obtained without giving the notice which they allege was necessary to preserve the copyright.  They allege as well that these publications without proper notice were done with the approval of Defendant Ludlow.  Some examples of those publications are as follows.

In 1961, the magazine Sing Out! published sheet music with lyrics for five verses of the musical composition of We Shall Overcome.  The sheet music is titled "We Shall Overcome," although the lyrics to the first verse read "We will overcome." Although the magazine contained a copyright notice, no separate notice was given for the Song.  In the 1960s, Folkways Records ("Folkways"), produced sound recordings of artists performing folk music, while Defendant Ludlow registered sheet music for the songs.  In 1961, Folkways released a recording of "We Shall Overcome" sung by Guy Carawan and authorized liner notes which included the lyrics to Verses 1, 2, and 3 of "We Shall Overcome"

8

covered under Reg. No. EU645288.  Folkways released additional
recordings and authorized liner notes of the Song in 1962, 1963,
and 1964. The Defendants' copyrights to the Song were not listed
on the liner notes.

The Present Dispute

In February 2015, WSOF requested a quote from the
Defendants for a synchronization license to use "We Shall
Overcome" in a documentary movie.  WSOF sent an a cappella
version of the first verse to the Defendants in March.  The
Defendants refused to grant WSOF a synchronization license to
use the Song, and WSOF alleges that for this reason it has been
unable to complete the documentary movie it is producing.  WSOF
paid the Defendants $45.50 for a compulsory license to use the
Song to produce and distribute digital phonorecords.

In 2013, Butler produced "The Butler," an award-winning
American historical drama, for which it wished to use "We Shall
Overcome" in several scenes.  The Defendants did not respond to
Butler's repeatedly requests for permission to use the Song
until September 2012, when they advised Butler that they would
charge $100,000 for a synchronization license for the proposed
uses of "We Shall Overcome" in "The Butler."  Butler ultimately
paid $15,000 for a license to use the Song for no more than ten
seconds.

The Plaintiffs filed this class action complaint against TRO and Ludlow on April 14, 2016.  In its first claim, the complaint seeks a declaratory judgment that the Copyright Act does not bestow upon the Defendants the rights they have asserted against the Plaintiffs and others because (1) the two copyright registrations do not cover the melody or "familiar lyrics" to the Song, but instead are limited at most to arrangements and some of the obscure additional verses, (2) the Defendants fraudulently obtained the copyrights, and (3) the copyrights "have been forfeited."  The complaint also seeks injunctive relief and damages.  The complaint includes four state law claims for violation of New York General Business Law § 349; breach of contract; money had and received; and rescission for failure of consideration.

At a pretrial conference on June 10, the parties represented that their principal dispute is whether the lyrics to the first verse of the Song are in the public domain.  On July 15, the Defendants moved to dismiss the amended class action complaint.[6]  While they seek dismissal of all the state law claims, they seek dismissal of only that portion of the

---

[6] The amended complaint was filed on June 17, 2016, and added Butler as a plaintiff.

10

federal law claims which challenges their rights under the Copyright Act to the lyrics in the first verse of the Song.

**DISCUSSION**

When deciding a motion to dismiss under Rule 12(b)(6), a court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor. Loginovskaya v. Batratchenko, 764 F.3d 266, 269-70 (2d Cir. 2014). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief." Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 68 (2d Cir. 2014). A claim has facial plausibility when "the factual content of the complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Tongue v. Sanofi, 816 F.3d 199, 209 (2d Cir. 2016) (citation omitted).

In ruling on a motion to dismiss, a "district court may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010) (citation omitted). "In copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any

contrary allegations, conclusions or descriptions of the works contained in the pleadings.  Id. (citation omitted).

The Defendants' motion seeks dismissal of that portion of the Copyright Act claims that is addressed to the lyrics in the first verse of the Song.  They assert that this Court may rule as a matter of law that those lyrics are sufficiently original to warrant copyright protection, that there has been a failure to plead that the Defendants engaged in a fraud on the Copyright Office that would invalidate their copyright, and that there has been a failure to plead that the publications of the Song's first verse after registration have divested the Defendants of any rights that they would otherwise have to the Song's first verse.  As for the state law claims, the Defendants contend both that they are preempted and that they fail to state a claim.

## I.   Copyright Validity

### A. Originality

The Defendants first seek a ruling that the lyrics in the first verse of the Song are original and thus entitled to copyright protection.  "[T]he law affords copyright protection to promote not simply individual interests, but -- in the words of the Constitution -- 'the progress of science and useful arts' for the benefit of society as a whole."  TCA Television Corp. v. McCollum, No. 16-134-CV, 2016 WL 5899174, at *5 (2d Cir. Oct.

11, 2016) (quoting U.S. Const. art I, § 8, cl. 8).  Copyright protection extends to "original works of authorship fixed in any tangible medium of expression" such as "musical works, including any accompanying words."  17 U.S.C. § 102(a)(2); 16 Casa Duse, LLC v. Merkin, 791 F.3d 247, 256 (2d Cir. 2015).  "The sine qua non of copyright is originality."  N.Y. Mercantile Exch., Inc. v. IntercontinentalExchange, Inc., 497 F.3d 109, 113 (2d Cir. 2007); see Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (1991).

The subject matter of copyright includes derivative works, defined as works "based upon one or more preexisting works" and "consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship."  17 U.S.C. § 101; Keeling v. Hars, 809 F.3d 43, 48 n.3 (2d Cir. 2015).  Copyright protection for derivative works extends "only to the material contributed by the author of such work."  17 U.S.C. § 103; Waldman Pub. Corp. v. Landoll, Inc., 43 F.3d 775, 782 (2d Cir. 1994).

"[W]hile a copy of something in the public domain will not, if it be merely a copy, support a copyright, a distinguishable variation will."  L. Batlin & Son, Inc. v. Snyder, 536 F.2d 486, 490 (2d Cir. 1976) (citation omitted).  The added material must demonstrate "more than a modicum of originality.  This has been

interpreted to require a distinguishable variation that is more than merely trivial." Waldman Pub. Corp., 43 F.3d at 782. "To extend copyrightability to minuscule variations would simply put a weapon for harassment in the hands of mischievous copiers intent on appropriating and monopolizing public domain work." L. Batlin & Son, 536 F.2d at 492.

It is well established that common phrases lack originality and are not eligible for copyright protection. In Acuff-Rose Music, Inc. v. Jostens, Inc., 155 F.3d 140 (2d Cir. 1998), the Court of Appeals affirmed a grant of summary judgment, finding that the lyric "you've got to stand for something, or you'll fall for anything," was not sufficiently original to be protected by the Copyright Act. Id. at 143. There were "numerous" uses of the saying, including an earlier song featuring nearly identical lyrics. Id. at 143-44. Accordingly, the phrase was in the public domain and any minor changes in the copyrighted work were not sufficiently original to warrant protection. Id. at 144. "[W]ithout independent creation, the lyric lines are not protected by copyright." Id. See also Edwards v. Raymond, 22 F. Supp. 3d 293, 298-99 (S.D.N.Y. 2014) (Cote, J.) (phrase "caught up" is not original and thus not eligible for copyright protection); Melville B. Nimmer & David Nimmer, 1 Nimmer on Copyright § 2.01[B][3] (2015). ("[T]here is

14

a reciprocal relationship between creativity and independent effort: the smaller the effort (e.g., two words) the greater must be the degree of creativity in order to claim copyright protection.").

The Copyright Act only protects "works of authorship."  17 U.S.C. § 102(a); 16 Casa Duse, LLC, 791 F.3d at 256; see U.S. Const., art. I, § 8 ("Congress shall have power . . . [t]o promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries).  An author is defined as the party who "actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 737 (1989); Shaul v. Cherry Valley-Springfield Cent. Sch. Dist., 363 F.3d 177, 185 (2d Cir. 2004).  Thus, one who has slavishly copied from others may not claim to be an "author."  L. Batlin & Son, 536 F.2d at 490; see also 1 Nimmer on Copyright § 1.06[A].

The Plaintiffs have plausibly alleged that the first verse in the copyrighted work "We Shall Overcome" lacks originality. The copyrighted work differs from the 1948 version by only three words: (1) "we'll" for "I'll"; (2) "shall" for "will"; and (3) "deep" for "down."  The 1959 Cherry Lane copyrighted sheet music

15

to "We Shall Overcome" differs only in the final line's use of the contraction "we'll" rather than "we shall."  The lyrics of the version published in Sing Out! magazine in the Summer of 1960 are identical to that of the copyrighted version.

The Plaintiffs have also plausibly alleged that the individuals listed on the 1960 copyright registration are not the authors of the changes that were made to the three words in the Song's first verse.  If they are not the authors, the Defendants cannot claim copyright protection.  The Plaintiffs allege that the author of the underlying work is unknown, that it is unclear who changed "will" to "shall", and that a Black tobacco worker named Lucille Simmons changed "I" to "We." Simmons is not listed as an author in the application to register the copyright for the Song.

The Defendants' arguments to the contrary are unavailing. The Defendants' argument that the copyright registrations are entitled to a presumption of validity does not compel dismissal of the claims.  A certificate of registration does constitute prima facie evidence of the validity of a copyright.  17 U.S.C. § 410(c); Urbont v. Sony Music Entm't, 831 F.3d 80, 88-89 (2d Cir. 2016).  But, that presumption may be rebutted where other evidence casts doubt on the question, such as "evidence that the work was copied from the public domain."  Fonar Corp. v.

16

Domenick, 105 F.3d 99, 104 (2d Cir. 1997).  The Plaintiffs have plausibly alleged that the lyrics in the first verse of the Song were copied from material in the public domain.

The Defendants urge that the matter of originality be determined on the basis of the pleadings and attached documents. They note that in the "substantial similarity" context, which is implicated in a copyright infringement action that compares a copyrighted work with a purportedly infringing one, a district court may "consider the similarity between . . . works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation."  Peter F. Gaito Architecture, 602 F.3d at 64. While it is not uncommon to dismiss claims of copyright infringement when two works are unquestionably dissimilar, here the Plaintiffs have adequately pleaded a lack of originality and of ownership rights in the lyrics to the first verse of the copyrighted Song.  Resolution of the issues of originality and ownership will require discovery and a more developed record. Whether the Plaintiffs will prevail awaits a decision through summary judgment or at trial.

**B. Fraud on the Copyright Office**

The Defendants also argue that the claim that they engaged in fraud on the Copyright Office must be dismissed.  An

17

allegation that an applicant for a copyright engaged in fraud is a serious matter.  It is the Copyright Office that determines whether a filer has complied with the technical requirements for a registration certificate.  Fonar Corp., 105 F.3d at 105.  A timely obtained Copyright Office certificate of registration "constitute[s] prima facie evidence of the validity of the copyright."  17 U.S.C. § 410(c).  A challenge to the presumption may be made through a showing "that there has been a fraud upon the copyright office."  Fonar Corp., 105 F.3d at 105.  The presumption of validity may only be overcome, however, by proof of deliberate misrepresentation.  Id.  Omissions that are inadvertent or innocent will not suffice.  Eckes v. Card Prices Update, 736 F.2d 859, 861 (2d Cir. 1984).  Moreover, the misrepresentation or omission must be sufficiently significant that it "might have occasioned a rejection of the application."  Whimsicality, Inc. v. Rubie's Costume Co., 891 F.2d 452, 456 (2d Cir. 1989) (citation omitted); see 2 Nimmer on Copyright § 7.20[B] ("[F]ailure to inform the Copyright Office of given facts is without substance, to the extent that the Office would have registered the subject work even had it known those facts.").  If fraud is proven, that showing can invalidate the copyright.  Whimsicality, Inc., 891 F.2d at 456 (citation omitted).  "[A] party must state with particularity the

18

circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b); see also Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006).

The Plaintiffs have plausibly alleged fraud on the Copyright Office.  They principally allege that the Defendants deliberately omitted from their application for a copyright in a derivative work all reference to the public domain spiritual or the publications of "I Shall Overcome" and "We Shall Overcome" as antecedents to the Song, opting instead to list the previously registered song "I'll Overcome" as the work from which the Song was derived.[7]  The Plaintiffs allege as well that there was an insufficient basis for listing as authors of the Song the persons identified in the application.  These allegations of fraud are sufficiently specific, and provide enough information from which to infer the requisite intent, to survive a motion to dismiss.  While the Defendants offer many facts and arguments in support of their good faith application for the two copyrights and their assertion that the registration

---

[7] "I'll Overcome," a hymn whose full title is "I'll Overcome Some Day," was registered with the Copyright Office in 1900.  The parties dispute whether this is a predecessor to the Song.  The Plaintiffs allege that the two songs share no common musical elements and few lyrics.

19

would have issued even if the omitted references had been incorporated in the application, the weighing of the evidence in this regard must await post-discovery motion practice or a trial.

**C. Divestment**

Finally, the Plaintiffs allege in support of the copyright claims that, to the extent the Song was properly copyrighted, the Defendants were divested of all rights in the lyrics to the first verse of the Song through its subsequent publication without the requisite copyright notice.  The Defendants' motion to dismiss this claim is denied as well.

Principles of common law copyright and the Copyright Act of 1909 (the "1909 Act") provide the governing law since the Song was published before 1978.

> "Common-law copyright protects the author's interest prior to publication and allows the author to control the first publication of the work.  Common-law copyright is extinguished upon the publication of the work by the author, or upon the publication by another with the author's consent.  Once the work is published, the author must rely for protection on federal statutory copyright."

Sanga Music, Inc. v. EMI Blackwood Music, Inc., 55 F.3d 756, 758-59 (2d Cir. 1995) (citation omitted).  Under the 1909 Act, publication without sufficient notice places the work in the public domain.  Id. at 759; see 17 U.S.C. § 10

(1909 Act). "Every reproduction of a copyrighted work must bear the statutory notice." Louis Dejonge & Co. v. Breuker & Kessler Co., 235 U.S. 33, 36 (1914).

The notice required by the 1909 Act was (1) either the word "Copyright", the abbreviation "Copr.", or the symbol "©"; (2) the name of the copyrighted proprietor; and (3) in the case of printed musical work, the year in which the copyright was secured by publication. Puddu v. Buonamici Statuary, Inc., 450 F.2d 401, 403 (2d Cir. 1971); 17 U.S.C. § 19 (1909 Act). When an individual work is published in a collection of works, if the notice given in the publication lists only the collective work author, and the individual work had a different author, "the discrepancy would constitute failure to comply with the statutory prerequisites to establish the copyright and would place the work in the public domain." Sanga Music, 55 F.3d at 760.

An exception to these rules, created to avoid "harsh forfeitures," exists "where a magazine has purchased the right of first publication under circumstances which show that the author has no intention to donate his work to the public." Id. at 760 (citation omitted). In such circumstances, "copyright notice in the magazine's name is sufficient to obtain a valid copyright on behalf of the beneficial owner, the author or

21

proprietor." Goodis v. United Artists Television, Inc., 425 F.2d 397, 399 (2d Cir. 1970). But the exception does not apply where "the overall message informed the public that this was an old folk song, of unknown authorship, and in the public domain." Sanga Music, 55 F.3d at 761; see 16 Casa Duse, 791 F.3d at 257 (discussing copyright in a separable contribution to a collective work). In Sanga Music, the Court of Appeals examined the intent of a song's author and the overall message conveyed in the magazine that published the song, to find that the Goodis exception did not apply and that the copyright notice in the periodical's masthead was insufficient. Sanga Music, 55 F.3d at 761. The song at issue in Sanga Music had been contributed by Seeger and the publication was in Sing Out! Id. at 758.

The complaint plausibly alleges that several works published after a copyright in the Song was obtained in 1960 did not include the copyright notice required by the 1909 Act. The complaint alleges publication in collective works that did not include a copyright notice listing Ludlow as the author or a year of first publication. Additionally, the complaint refers to published material that would suggest that the Defendants will not be able to rely on the Goodis exception. Thus, the Plaintiffs have plausibly alleged that any copyright obtained by the Defendants has been abrogated under a theory of divestment.

The Defendants argue that an examination of the publications to which the complaint refers will undermine the theory of divestment.  They also contend that the complaint does not plausibly plead that the post-1960 publications of the Song were authorized by the Defendants or that the authors of the Song intended to place the Song in the public domain.  In other instances, they contend that the publication of the lyrics was a classic fair use.  As for the liner notes that accompanied the Folkways albums, they argue that an amendment to the Copyright Act regarding phonorecords should be read to apply as well to the liner notes that accompany phonorecords.  Most if not all of these arguments are premature.  This motion to dismiss does not present the occasion to weigh the merits of the parties' contentions but only to determine the sufficiency of the pleading of a claim.

## II. State Law Claims

The Defendants argue that the Copyright Act preempts the Plaintiffs' state law claims.  Those claims are for money had and received, violation of New York General Business Law § 349, breach of contract, and rescission for failure of consideration.  They are correct.  Because these four claims are preempted, it is unnecessary to reach the Defendants' additional argument that the four state law causes of action also fail to state a claim.

23

One of the goals of the Copyright Act of 1976 was to create a national, uniform copyright law by broadly pre-empting state statutory and common-law copyright regulation. Accordingly, the Copyright Act preempts state law claims asserting rights equivalent to those protected within the general scope of the statute.

Urbont v. Sony Music Entm't, 831 F.3d 80, 93 (2d Cir. 2016)

(citation omitted). The Copyright Act provides:

On and after January 1, 1978 all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a) (1976).

There is a two prong test for a preemption analysis.

Section 301 of the Copyright Act preempts a state law claim if:

"(i) the work at issue comes within the subject matter of

copyright and (ii) the right being asserted is equivalent to any

of the exclusive rights within the general scope of copyright."[8]

Forest Park Pictures v. Universal Television Network, Inc., 683

---

[8] The Copyright Act protects the rights to (1) to reproduce a copyrighted work; (2) to prepare derivative works based upon a copyrighted work; (3) to distribute copies or phonorecords of a copyrighted work to the public; (4) to perform a copyrighted work publicly; and (5) to display a copyrighted work publicly. 17 U.S.C. § 106.

F.3d 424, 429 (2d Cir. 2012) (citation omitted).

> "The subject matter requirement is satisfied if
> the claim applies to a work of authorship fixed in a
> tangible medium of expression and falling within the
> ambit of one of the categories of copyrightable works.
> . . . A work need not consist entirely of
> copyrightable material in order to meet the subject
> matter requirement, but instead need only fit into one
> of the copyrightable categories in a broad sense."

Briarpatch Ltd., L.P v. Phoenix Pictures, Inc., 373 F.3d 296,

305 (2d Cir. 2004).  "[W]orks may fall within the subject matter

of copyright, and thus be subject to preemption, even if they

contain material that is uncopyrightable."  Forest Park

Pictures, 683 F.3d at 429.  The scope of the subject matter of

preemption is intended to be broad, and "includes all works of a

type covered by sections 102 and 103, even if federal law does

not afford protection to them."  Id. at 430.  This ensures that

state law cannot be used to make private that which Congress has

decided should be in the public domain.  Id.

The subject matter of the Plaintiffs' claims is the Song,

which is a type of work that falls within the scope of the

Copyright Act.  The Song is a musical composition and as such is

a paradigmatic work protected by the Copyright Act.  17 U.S.C. §

102(a)(2).  Plaintiffs principally argue that their state law

claims are not preempted because the Song is in the public

domain.  This argument fails.  The subject matter prong of the

preemption test does not inquire whether the work will ultimately be entitled to copyright protection but whether the work is of a type that is protected by the Copyright Act.  It is.

The second prong of the preemption analysis inquires whether the rights being asserted through the state law claims are equivalent to a right protected by the Copyright Act.  If a claim "seeks to vindicate a legal or equitable right that is equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106," then it is preempted.  Forest Park Pictures, 683 F.3d at 430 (citation omitted).  "In other words, the state law claim must involve acts of reproduction, adaptation, performance, distribution or display."  Briarpatch Ltd., L.P, 373 F.3d at 305.  For example, a claim for declaratory judgment regarding exclusive rights within the scope of copyright is equivalent to a copyright claim, and thus is preempted.  Id. at 307; see also Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 717 (2d Cir. 1992)(unfair competition and misappropriation claims preempted); Harper & Row Publishers, Inc. v. Nation Enterprises, 723 F.2d 195, 201 (2d Cir. 1983), rev'd on other grounds, 471 U.S. 539 (1985) (claim of conversion preempted).

A claim is not equivalent "if an extra element is required

instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action," and in such circumstances there is no preemption.  Forest Park Pictures, 683 F.3d at 430 (citation omitted).  The Second Circuit "takes a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim.  Awareness or intent, for instance, are not extra elements that make a state law claim qualitatively different."  Briarpatch Ltd., 373 F.3d at 306 (citation omitted).  On the other hand, a claim which includes as an element a breach of fiduciary duty is not preempted, because "the underlying right they seek to vindicate is the right to redress violations of the duty owed to a partnership by those who control it."  Id. at 307.  The Second Circuit has found

> numerous categories of claims to be not preempted, including trade secret claims, in which the plaintiff must show the defendant breached a duty of trust through improper disclosure of confidential material; certain "hot news" misappropriation claims, because the plaintiff must show time-sensitive factual information, free-riding by the defendant, and a threat to the very existence of the plaintiff's product; and breach of confidential relationship, in which the plaintiff must show an obligation not to disclose ideas revealed in confidence.

Forest Park Pictures, 683 F.3d at 430-31 (citation omitted).

But see Barclays Capital Inc. v. Theflyonthewall.com, Inc., 650

27

F.3d 876, 902-907 (2d Cir. 2011) (finding "hot news" misappropriation claim preempted).

### 1. Money Had and Received

The elements of the claim "money had and received" are: "(1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." Middle E. Banking Co. v. State St. Bank Int'l, 821 F.2d 897, 906 (2d Cir. 1987) (citation omitted). "A cause of action for money had and received is one of quasi-contract." Melcher v. Apollo Med. Fund Mgmt. LLC, 959 N.Y.S.2d 133, 142 (1st Dep't 2013). Claims in quasi-contract or unjust enrichment in which the plaintiff "need not allege the existence of an actual agreement between the parties [are] not materially different from a claim for copyright infringement." Forest Park Pictures, 683 F.3d at 432; see also 1 Nimmer on Copyright § 1.01[B][1](g) ("[A] state law cause of action for unjust enrichment or quasi-contract should be regarded as an equivalent right and hence, pre-empted insofar as it applies to copyright subject matter.").

The Plaintiffs' claim for money had and received is preempted by the Copyright Act. The acts through which the Defendants received money belonging to the Plaintiffs are only

unjust if the Defendants do not own the relevant portions of a copyright. This claim's element of "enrichment," therefore, does not create a qualitatively different claim than a claim that the Defendants do not possess a copyright. See Briarpatch Ltd., 373 F.3d at 306 (unjust enrichment claim preempted).

### 2. New York General Business Law § 349

The Plaintiffs also assert a claim under N.Y. Gen. Bus. Law § 349. To assert a claim under GBL § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015) (citation omitted).

Depending on the nature of the rights asserted in a GBL § 349 claim, the claim may not be preempted. For instance, where the focus of the claim in on "the actual deceptive effect on consumers," as it was in the trade dress passing off claim at issue in Samara Bros. v. Wal-Mart Stores, Inc., 165 F.3d 120, 131 (2d Cir. 1998), rev'd on other grounds, 529 U.S. 205 (2000), the claim is not preempted. Id. at 132; see also Warner Bros. v. ABC, 720 F.2d 231, 247 (2d Cir. 1983) (passing off claim not preempted when brought as unfair competition claim); 1 Nimmer on Copyright § 1.01[B][1](e) (noting "there is no pre-emption of

the state law of fraud, nor of the state law of unfair competition of the 'passing off' variety").

The Plaintiffs' GBL § 349 claim is preempted.  The right being challenged through this claim is the very right protected by the Copyright Act -- the right to restrict the performance and distribution of a copyrighted work.  The Plaintiffs contend that the Defendants are misleading the public by asserting their copyright.  Such a claim is not qualitatively different than the Plaintiffs' request for a declaration that the Defendants have no valid copyright.  Accordingly, this claim is preempted as one that seeks to vindicate a right equivalent to the exclusive rights protected by the Copyright Act.

### 3. Breach of Contract

The Plaintiffs' third claim is a claim for breach of contract.  "Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011).

A contract claim may escape preemption if it seeks to vindicate rights, such as a promise to pay, that are qualitatively different from those included in the Copyright Act.  See, e.g., Forest Park Pictures, 683 F.3d at 433-34.  On

the other hand, where the right asserted hinges essentially on a determination of whether the rights protected by the Copyright Act exist, the breach of contract claim is preempted.  See 1 Nimmer on Copyright § 1.01[B][1](a) (contract claims alleging "nothing other than derogation of rights under copyright" are preempted).

The Plaintiffs' contract claim is preempted.  The Plaintiffs allege nothing more than that the Defendants breached their contracts with the Plaintiffs because the Defendants "implicitly represented and warranted that they own the copyrights to the Song as licensed therein."  The claims that there was a failure of consideration and a breach of promise both rely on the alleged misrepresentation that the Defendants have a copyright.  Accordingly, the breach of contract claim in this case simply reframes the single question presented in this litigation, that is, whether the Defendants' copyright is valid.

**4. Rescission**

The final state law claim is the claim for rescission. "The equitable remedy of rescission is to be invoked only when there is lacking complete and adequate remedy at law and where the status quo may be substantially restored."  Sokolow, Dunaud, Mercadier & Carreras, LLP v. Lacher, 747 N.Y.S.2d 441, 446 (App. Div. 1st Dep't 2000) (citation omitted).  "In order to justify

31

the intervention of equity to rescind a contract, a party must allege fraud in the inducement of the contract; failure of consideration; an inability to perform the contract after it is made; or a breach in the contract which substantially defeats the purpose thereof." Babylon Associates v. Suffolk Cty., 475 N.Y.S.2d 869, 874 (App. Div. 2d Dep't 1984) (per curiam). The effect of rescission "is to put the parties back in the same position they were in prior to the making of the contract. Holdeen v. Rinaldo, 281 N.Y.S.2d 657, 661 (App. Div. 3d. Dep't 1967). "Rescission is an extraordinary remedy, appropriate only where the breach is found to be material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 143 (2d Cir. 2000) (citation omitted).

The Plaintiffs' claim for rescission is preempted, for the reasons already explained in connection with the Plaintiffs' breach of contract claim. The claim for rescission is based entirely on the allegation that there was a failure of consideration because the Defendants have no valid copyright in the Song.

## CONCLUSION

The Defendants' July 15, 2016 motion to dismiss is granted

in part.  Each of the state law claims is dismissed on the ground that they are preempted.


Dated:     New York, New York
           November 21, 2016


_____
                DENISE COTE
         United States District Judge