UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
WE SHALL OVERCOME FOUNDATION and     :        16cv2725(DLC)
BUTLER FILMS, LLC,                   :
                                     :        OPINION AND ORDER
                 Plaintiffs,         :
                                     :
        -v-                          :
                                     :
THE RICHMOND ORGANIZATION, INC. (TRO :
INC.) and LUDLOW MUSIC, INC.,        :
                                     :
                 Defendants.         :
                                     :
------------------------------------ X

APPEARANCES:
For the Plaintiffs:
Mark C. Rifkin
Randall S. Newman
Gloria K. Melwani
Wolf Haldenstein Adler Freeman & Herz LLP
270 Madison Ave, 10th Floor
New York, NY 10016

For the Defendants:
Paul LiCalsi
Ofer Reger
Robins Kaplan LLC
601 Lexington Ave, Suite 3400
New York, NY 10022

DENISE COTE, District Judge:

        The parties have settled this declaratory judgment action

addressing the validity of two copyrights in the musical

composition "We Shall Overcome" (the "Song").  As part of the

settlement, defendants agreed to stop claiming a copyright in

the melody or lyrics of any verse of the Song.  The plaintiffs

now move pursuant to 17 U.S.C. § 505 ("Section 505") for an

award of attorneys' fees in the amount of over $1 million and expenses of over $60,000.  For the following reasons, they are awarded $352,000 in attorneys' fees, plus certain expenses and costs, as described in an Order that accompanies this Opinion.

**BACKGROUND**

The Song is an iconic anthem of the American civil rights movement, although its precise origins are unknown.  See We Shall Overcome Foundation v. The Richmond Organization, Inc., 16cv2725(DLC), 2017 WL 3981311, at *1 (S.D.N.Y. Sep. 8, 2017) ("Summary Judgment Opinion").  A version of the Song was used as a protest song by striking tobacco workers in the 1940s.  Id. The defendants, The Richmond Organization, Inc. and its subsidiary and imprint Ludlow Music, Inc., obtained copyrights for the Song in 1960 and 1963.  The first copyright listed three authors; the second added a fourth author, Pete Seeger.  Id. at *3-5.  As Seeger has explained, it is "impossible" to know the original authors of the Song.  Id. at *4.

The defendants have described their virtuous motives in obtaining the copyrights for the Song.  They wanted to protect, to the extent they could, the Song from being abused commercially.  The licensing fees earned from the Song's copyrights have been modest, and the writers' portion of the royalties has been contributed to the Highlander Research and

Education Center, a charitable fund that provides scholarships to African-American youth.

The plaintiffs, We Shall Overcome Foundation ("WSOF") and Butler Films, LLC ("Butler"), brought this action on April 14, 2016, challenging through a putative class action the validity of the defendants' copyrights in the Song.  Butler had produced an award-winning American historical drama for which it sought to use the Song in several scenes.  It ultimately paid $15,000 for a license to use the Song for no more than ten seconds. WSOF had requested a quote for a synchronization license to use the Song in a documentary.  That request was refused.

The complaint sought a declaration that the copyrights in the Song are limited to, at most, the arrangements of the Song and some of the more obscure verses of the Song.  They asserted as well that the defendants had fraudulently obtained the copyrights and forfeited the copyrights through publication of the Song without the required copyright notices.  The complaint also included four state law claims.

From the initial conference held on June 10, 2016, the parties agreed that their principal dispute was whether the lyrics to the first verse of the Song were in the public domain. On July 14, the defendants moved to dismiss the amended class action complaint, in particular the state law claims and the challenge to their copyright in the lyrics to that first verse.

An Opinion of November 21, 2016, granted the motion to dismiss the state law claims, but denied it with respect to the copyright claims.  We Shall Overcome Foundation v. The Richmond Organization, Inc., 221 F. Supp. 3d. 396 (S.D.N.Y. 2016) ("November 2016 Opinion").

There was little likelihood that the copyright claim could be dismissed for its failure to state a claim.  The November 2016 Opinion noted that the plaintiffs had plausibly alleged that the first verse of the Song lacked originality.  Id. at 407.  In bringing their motion to dismiss the copyright claims, the defendants had relied on the presumption of validity inherent in copyrights.  But that presumption is rebuttable and the plaintiffs had plausibly alleged that the lyrics were copied from material that was already in the public domain.  Id. at 406-07.

As for that prong of the motion that sought to dismiss the claim of fraud on the copyright office, the complaint plausibly alleged that the copyrights had been obtained through fraud.  It asserted that the defendants deliberately omitted from the copyright applications, which were for a copyright in a derivative work, all references to the public domain spiritual and certain prior publications of the Song.  The complaint also alleged that there was an insufficient basis for listing as

4

authors those persons identified as authors in the copyright applications.  Id. at 407-08.

Discovery on the copyright claims followed.  On June 20, 2017, the plaintiffs filed a motion for summary judgment in which they principally argued that the lyrics and melody in the first verse of the Song, and its identical fifth verse ("Verse 1/5"), were not sufficiently original to qualify for copyright registration as a derivative work.  Through the Summary Judgment Opinion, issued on September 8, 2017, this Court ruled on that motion and the accompanying Daubert motions addressed to the defendants' two experts.

The Summary Judgment Opinion held that the plaintiffs had carried their burden of showing that the two verses lacked the originality required for protection as a derivative work, and that the defendants had failed to offer evidence of originality that could raise a material question of fact requiring a trial. Summary Judgment Opinion, 2017 WL 3981311, at *11-17.  The Opinion observed that the gap in proof of originality could not be filled by the defendants' good intentions.  Id. at *15.

As before, the defendants principally relied on the presumption of validity to defend their copyrights.  The plaintiffs successfully rebutted that presumption through evidence that the applications for the copyrights in the Song were significantly flawed.  As for the challenge to the

originality of the Song's Verse 1/5, the defendants emphasized only one word change:  they argued that the change of the word will to the word shall was transformative.  The Summary Judgment Opinion held that the substitution of that single word was "quintessentially trivial."  Id. at *15.

The Summary Judgment Opinion denied plaintiffs' motion addressed to the remainder of the claims, however. Specifically, summary judgment was denied on the issues of authorship, divestment, and fraud.  Id. at *17-19.  Those claims were set down for trial.  Finally, the Summary Judgment Opinion largely granted the plaintiffs' motions to exclude testimony from two defense experts pursuant to Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993).  Summary Judgment Opinion at *19-21.

Defendants then moved to dismiss the plaintiffs' remaining claims on the ground that there was no longer a justiciable controversy in light of the Summary Judgment Opinion.  That motion was denied summarily on November 1, 2017.  On November 14, a conference was held to organize litigation on the remainder of the case.  The Court ruled that any class certification proceedings would take place before the trial.  On December 1, plaintiffs withdrew their class action allegations.

Accordingly, trial was set for February 5, 2018.  The defendants attempted to avoid a trial, but to preserve their

right to challenge the Summary Judgment Opinion on appeal.  They
tendered a covenant-not-to-sue to the plaintiffs over the all
verses of the song except Verse 1/5, and a revised covenant when
the first was challenged as insufficient.  They argued that this
mooted the claims as to the remaining verses of the Song, and
allowed a final judgment to be entered.  On January 12, 2018,
the Court ruled that the covenant did not moot the alternative
grounds for challenging the copyright in Verses 1/5,
particularly the theories of fraud and divestment, and ordered
that a trial would take place at least as to those theories.  We
Shall Overcome Foundation v. The Richmond Organization, Inc.,
No. 16cv2725 (DLC), 2018 WL 400776 (S.D.N.Y. Jan. 12, 2018).

The parties thereafter entered into a settlement and
presented to the Court, for its signature, a Stipulation and
Order of dismissal with prejudice ("Stipulation") pursuant to
Rule 41(a)(1)(A)(ii), Fed. R. Civ. P.  The Stipulation was filed
on the public docket on January 26, 2018, and so-ordered by this
Court on the signature line provided by the parties.  In that
detailed document, the defendants abandoned their right to
appeal from the Summary Judgment Opinion.  They also "agree[d]
that hereafter they will not claim copyright in the melody or
lyrics of any verse of the song We Shall Overcome ("the Song"),
included in" their two copyright registrations.  And,
"Defendants agree[d] that the melody and lyrics of those verses

of the Song are hereafter dedicated to the public domain."  The defendants did preserve their claim of copyright in the specific arrangements of the Song embodied in the deposit copies.

<u>**DISCUSSION**</u>

**I.  Prevailing Party**

Section 505 of the Copyright Act provides that a district court "may . . . award a reasonable attorney's fee to the prevailing party."  17 U.S.C. § 505.  "Congress has included the term 'prevailing party' in various fee-shifting statutes, and it has been the Court's approach to interpret the term in a consistent manner.'"  <u>CRST Van Expedited, Inc. v. E.E.O.C.</u>, 136 S.Ct 1642, 1646 (2016).  "The 'touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties.'"  <u>Id.</u> (quoting <u>Texas State Teachers Assn. v. Garland Independent School Dist.</u>, 489 U.S. 782, 789 (1989)).  "This change must be marked by 'judicial imprimatur.'"  <u>Id.</u> (quoting <u>Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health and Human Resources</u>, 532 U.S. 598, 602-03 & n.4 (2001)).  <u>Buckhannon</u> recognizes two types of material alterations accompanied by judicial imprimatur:  "some relief on the merits" and "settlement agreements enforced through a consent decree."  <u>Buckhannon</u>, 532 U.S. at 603-604. The Second Circuit, however, has clarified that these are mere "examples" of sufficient outcomes, <u>Perez v. Westchester County</u>

Department of Corrections, 587 F.3d 143, 151 (2d Cir. 2009), and
that others may be sufficient.

The plaintiffs are the prevailing party.  Although
plaintiffs did not obtain a final judgment on the merits
following a trial, they obtained a summary judgment decision in
their favor on the merits of their primary claim.  And, with
that Stipulation, the defendants not only surrendered their
right to appeal the decision rendered against them in the
Summary Judgment Opinion, but also reduced the scope of their
copyrights to a fraction of the defendants' originally claimed
rights.[1]  With that public relinquishment of rights, the
defendants materially altered their legal relationship with not
only the plaintiffs but also with all potential users of the
Song forever.  The parties then submitted the terms of the
settlement to the Court for its signature and for filing in the
public record.  As the defendants concede, "plaintiffs are, in
part, 'prevailing parties in the litigation.'"

Defendants primarily contend that plaintiffs have prevailed
only in part, and should therefore not be deemed to be the
"prevailing party."  Although it is true that plaintiffs have
not prevailed on every aspect of their complaint, that is not

---

[1] While a stipulation of dismissal pursuant to Rule
41(a)(1)(A)(ii), Fed. R. Civ. P., does not require court
approval to be effective, as described above, the dismissal of
this case included the terms of the settlement and was submitted
by the parties for this Court's signature.

the standard.  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) ("plaintiffs may be considered 'prevailing parties' for attorney's fee purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." (citation omitted)).  The plaintiffs were broadly successful here.  Any of defendants' "success" in this case was not judicially sanctioned, as in the withdrawal of the class action allegations, or concerned an insignificant matter, such as the state law claims.  Plaintiffs' status as a prevailing party is not diminished by the few issues on which defendants "prevailed."

## II. The Fogerty Factors

Once the prevailing party requirement is met, the Supreme Court has "recognized the broad leeway § 505 gives to district courts" in awarding fees, but has "also established several principles and criteria to guide their decisions."  Kirtsaeng v. John Wiley & Sons, Inc., 136 S.Ct. 1979, 1985 (2016) (citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 519 (1994)).  Among the most important principles is that "a district court may not award attorney's fees as a matter of course; rather, a court must make a more particularized, case-by-case assessment."  Id. (citation omitted).

With that principle in mind, there are "'several nonexclusive factors' to inform a court's fee shifting

decisions", known as the <u>Fogerty</u> factors:  "'frivolousness,
motivation, objective unreasonableness[,] and the need in
particular circumstances to advance considerations of
compensation and deterrence.'"  <u>Id.</u> (quoting <u>Fogerty</u>, 510 U.S.
at 534 & n.19).  These factors were not intended to be the "end
of the matter":  courts retain discretion to consider other
factors.  <u>Id.</u>  Ultimately, "copyright law . . . serves the
purpose of enriching the general public through access to
creative works."  <u>Id.</u> at 1986 (citation omitted).  "The statute
achieves that end by striking a balance between two subsidiary
aims:  encouraging and rewarding authors' creations while also
enabling others to build on that work.  Accordingly, fee awards
under § 505 should encourage the types of lawsuits that promote
those purposes."  <u>Id.</u> (citation omitted).

     The first factor to consider is whether the defense
proffered here was frivolous.  While not frivolous, it was weak.
Once it became clear that the defendants could not rely
exclusively on the presumption provided by the registration of
the copyrights, the weaknesses in the defense of the copyrights
were evident.  The defense on the issue of originality boiled
down essentially to a single word change between the Song and
the predecessor version indisputably in the public domain:  the
change from will to shall.  The defense on the issue of
authorship was similarly troubled.  The listed authors were not

available to defend their authorship, and the most famous of
their number -- Pete Seeger -- had acknowledged that the authors
were unknown.  The defendants were even at significant risk of a
finding that they had engaged in a fraud on the Copyright
Office.  The applications for registration of the copyrights had
omitted material disclosures of prior works and authors.

The second factor to consider is the defendants' motivation
in defending the copyrights.  The defendants emphasize this
factor as weighing in their favor and they are correct.  The
defendants obtained the copyrights out of respect for the Civil
Rights Movement, to protect the Song from what they feared might
be improper exploitation of an American treasure, and to
continue to send writers' royalties to the Highlander Research
and Education Center.

The next factor to weigh is whether defendants' litigation
position was objectively unreasonable.  This factor is to be
given "substantial weight" in the balancing of the factors, but
cannot be controlling.  Kirtsaeng, 136 S.Ct. at 1988.  The
Second Circuit, in the related context of Rule 11, Fed. R. Civ.
P., has defined "objective unreasonableness" for legal theories
as "whether the argument is frivolous, i.e. the legal position
has no chance of success, and there is no reasonable argument to
extend, modify, or reverse the law as it stands."  Star Mark
Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682

F.3d 170, 177 (2d Cir. 2012).  With regard to factual
contentions, objective unreasonableness requires "a particular
allegation" to be "utterly lacking in support."  Storey v. Cello
Holdings, L.L.C., 347 F.3d 370, 388 (2d Cir. 2003) (citation
omitted).

Although, defendants' arguments in this case were not
strong, they were not, with a few exceptions, objectively
unreasonable.  On summary judgment, this Court found that there
were material factual disputes as to the authorship, divestment,
and fraud on the copyright claims.  That finding may not always
be completely dispositive of whether those claims were "utterly
lacking in support," but in this case it indicates that
defendants' positions were not objectively unreasonable.  As to
the ground on which summary judgment was granted, originality,
it was not unreasonable to argue that the originality question
was for a jury.  Defendants' position on summary judgment was
not objectively unreasonable.

A few aspects of the defendants' litigating position,
however, bordered on the objectively unreasonable.  The motion
to dismiss, to the extent it challenged the pleading of the
copyright claims, was weak.  The plaintiffs' complaint included
extensive allegations sufficient to rebut the presumption of
validity inherent in all copyrights.  Defendants' first motion
to dismiss the case after the Summary Judgment Opinion also

13

stood little chance of success.  Plaintiff WSOF clearly stated their intention to use the entire Song in a soundtrack in their amended complaint, and at that time defendants' had not returned the licensing fees.  And defendants' second motion to terminate the case, on the basis of "mootness," was flawed inasmuch as it confused constitutional mootness with prudential mootness.  It also bears noting that the second motion came on the eve of a trial that the parties had already invested substantial effort preparing for.  That motion is best understood as reflecting the defendants' lack of confidence in their ability to defend against either the authorship or fraud challenges to their copyrights at trial.  The objective unreasonableness factor, therefore, tilts in favor of plaintiffs, albeit slightly.

The last factor is considerations of compensation and deterrence.  While the plaintiffs clearly prevailed and are deserving of compensation, the issues of compensation and deterrence are complex in this case.  Because of the plaintiffs, the Song is now, except for the arrangements covered by the copyrights, in the public domain.  This result serves one of the twin of the copyright statute, which is to provide access for the public to the creative works of others, and to permit others to build on those creative works.  That aim is all the more important in this case in light of the Song's status as an American treasure.

The deterrence aspect of this factor weighs less strongly. In this case, the only thing that could be deterred would be the baseless assertion of copyright rights.  Although, as stated above, the defenses were not strong, they were not baseless, particularly when so much of the case turned on events that happened 50 or more years ago.  Considerations of deterrence do not weigh heavily in the balancing of the Fogerty factors here.

After analyzing the Fogerty factors, the plaintiffs are entitled to a fee award under Section 505.  The degree to which plaintiffs succeeded in this litigation, and the inestimable benefit they have conferred on the public through doing so, renders this the type of lawsuit that should be encouraged in order to promote the purposes of the Copyright Act.  Kirtsaeng, 136 S.Ct. at 1986.

## III.  Calculation of the Presumptively Reasonable Fee

That plaintiffs are entitled to a fee award, however, does not resolve the amount of fees to which they are entitled. Section 505 fee awards are based off a calculation of the "presumptively reasonable fee," or the fee that "'a reasonable, paying client would be willing to pay.'" Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (quoting Arbor Hill Concerned Citizens Ass'n v. County of Albany, 493 F.3d 110, 118 (2d Cir. 2007), amended on other grounds by 522 F.3d 182 (2d Cir. 2008)).  "[T]he lodestar -- the product of a

reasonable hourly rate and the reasonable number of hours

required by the case -- creates a 'presumptively reasonable

fee.'"  Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d

Cir. 2011).

> In determining what rate a paying client would be
> willing to pay, the district court should consider,
> among others, the Johnson factors; it should also bear
> in mind that a reasonable, paying client wishes to
> spend the minimum necessary to litigate the case
> effectively.  The district court should also consider
> that such an individual might be able to negotiate
> with his or her attorneys, using their desire to
> obtain the reputational benefits that might accrue
> from being associated with the case.

Arbor Hill, 522 F.3d at 190.  The Johnson factors are:

> (1) the time and labor required; (2) the novelty and
> difficulty of the questions; (3) the level of skill
> required to perform the legal service properly; (4)
> the preclusion of employment by the attorney due to
> acceptance of the case; (5) the attorney's customary
> hourly rate; (6) whether the fee is fixed or
> contingent; (7) the time limitations imposed by the
> client or the circumstances; (8) the amount involved
> in the case and the results obtained; (9) the
> experience, reputation, and ability of the attorneys;
> (10) the "undesirability" of the case; (11) the nature
> and length of the professional relationship with the
> client; and (12) awards in similar cases.

Arbor Hill, 522 F.3d at 186 n.3 (citing Johnson v. Ga. Highway

Exp., Inc., 488 F.2d 714, 716 (5th Cir. 1974)).[2]

---

[2] At least one court in this district has observed that the
Supreme Court in Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542,
551 (2010), "cast doubt on the usefulness of the Johnson factors
as a methodology for calculating attorneys' fees, stating that
the method 'gave very little actual guidance to district
courts.'"  Echevarria v. Insight Medical, P.C., 102 F. Supp. 3d
511, 515 n.2 (S.D.N.Y. 2015).  As that court concluded, however,
the approach called for by Arbor Hill is "not at odds with the

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley, 461 U.S. at 437. "'Applications for award of fees must be documented by time records,' and such records should be 'contemporaneously created' and should 'specify, for each attorney, the date, the hours expended, and the nature of the work done.'" Barclays Capital Inc. v. Theflyonthewall.com, No. 06cv4908(DLC), 2010 WL 2640095, at *2 (S.D.N.Y. June 30, 2010) (quoting Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009)).  The plaintiffs here have supported their application with contemporaneous time records, organized by attorney and then by date, which describe generally the tasks performed and the number of hours expended in tenth-of-an-hour increments.

Plaintiffs represent that they eliminated time spent drafting and defending the state law claims and the class certification allegations.  They also reduced their hours by a further 10 percent to eliminate any concern over duplicative

---

Supreme Court's reasoning in Perdue because like the lodestar, it takes into account all the 'relevant factors' in setting a reasonable rate and then uses that rate to determine the reasonable fee award." Id. (citing G.B. ex. rel. N.B. v. Tuxedo Union Free Sch. Dist., 894 F. Supp. 2d 415, 427 n.11 (S.D.N.Y. 2012)).  And, as observed in Echevarria, the Second Circuit has yet to overrule Arbor Hill, and has cited it with approval in post-Perdue cases.  Id.  It should be noted, however, that consideration of the Johnson factors does not make a material difference in the outcome of this case.

work by attorneys.  As an overall matter, comparison with the time spent by defense counsel on this litigation indicates this request is a reasonable reflection of the investment in time made by the skilled counsel representing the plaintiffs.[3]

Despite the plaintiffs' unilateral measures to adjust their fee request and the request's reasonableness when measured against the defendants' expenditures, the size of the award here must be substantially reduced below the amount requested.  As explained below, the plaintiffs are entitled to a significantly lower hourly rate than they have requested.  Defendants have also made specific objections to certain hours expended in plaintiffs' fee request.  In considering those objections, "an exacting, entry-by-entry review need not be conducted."  Id. at *3.  A review of enumerated categories of objections shows that few of the objections are well-taken.  Those categories are also addressed below.

### A.  Presumptively Reasonable Hourly Rate

Plaintiffs' counsel have requested as hourly rates the rates they normally charge hourly-fee-paying clients.  These hourly rates appear generally in-line with the rates charged for complex commercial litigation in the Southern District of New York.  Indeed, they are comparable to the rates charged by

---

[3] Defense counsel expended roughly twice as many hours defending the case as plaintiffs' counsel spent investigating and pursuing the litigation.

defense counsel, prior to defense counsel's 50% rate reduction in view of the charitable status of their client.

The inquiry <u>Arbor Hill</u> demands, however, is to determine the rate a reasonable, hourly-fee paying client would be willing to pay in the circumstances of a particular case.  That reasonable client wishes to spend the minimum necessary to litigate the case effectively, and might be able to "negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case."  <u>Arbor Hill</u>, 522 F.3d at 190.  <u>Arbor Hill</u> further clarifies that courts should

> consider factors including, but not limited to, the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, <u>whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation</u>."

<u>Id.</u> at 184 (emphasis supplied).  And <u>Arbor Hill</u> further clarifies that:

> <u>a reasonable, paying client might consider whether a lawyer is willing to offer his services in whole or in part pro bono, or to promote the lawyer's own reputational or societal goals</u>.  Indeed, by focusing on the hourly rate at which a client who wished to pay

no more than necessary would be willing to compensate his attorney, the district court can enforce market discipline, approximating the negotiation that might ensue were the client actually required to pay the attorney's fees.

Id. at 192 (emphasis supplied).

Plaintiffs' counsel pursued this case on a contingent fee arrangement.  Any hypothetical fee negotiation for this case would have to take into account that this was not an ordinary copyright dispute.  For the principal of the primary plaintiff, this case represented, by his own description, a "calling."  As the time records indicate, plaintiffs' counsel obtained substantial publicity and reputational benefits for themselves by bringing and prevailing in this case.  The Song is of historical importance, and many wished to see it returned to the public domain.  Any reasonable, hourly fee-paying client choosing to bring this case, would likely have found pro bono or reduced fee representation to take on this action.

Two benchmarks that this Court takes into account in this regard are the fee-reduction that defense counsel offered their clients, and the amount reasonably recoverable if this case had proceeded as a common-fund class action.  Defense counsel reduced their fees 50% in light of the defendants' history donating 50% of the royalties from the Song to charity.  The charitable aspects of the plaintiffs' side of the case were similarly substantial -- plaintiff WSOF is a non-profit

organization.  This benchmark indicates that a reasonable, fee-paying plaintiff could likely seek at least a 50% fee-reduction in a hypothetical fee negotiation.

Another benchmark is that plaintiffs' counsel sought to achieve common fund recovery as a class action, from which their attorneys' fees would be paid.  The maximum fees recoverable from that class action, however, would have been relatively modest, as plaintiffs' counsel were advised early in this case.  Although plaintiffs' counsel might have had some expectation of receiving an additional fee under Section 505, such awards are not a sure thing.

Ultimately, although there is no precise, mathematical formula that can determine the appropriate amount of the reduction, an across-the-board reduction of 65% from the requested hourly rates is a reasonable approximation of the fees that the reasonable, hourly-fee paying client could expect to pay to bring a case such as this one.  This Court is mindful of Arbor Hill's admonition that "attorneys from private law firms engaged in pro bono work are [not] excluded from the usual approach to determining attorneys' fees."  Arbor Hill, 522 F.3d at 184 n.2.  Counsel in this case were skillful and efficient.  Their work deserves appropriate compensation.  But at the same time, cases that would be attractive to many talented lawyers, either as candidates for pro bono or reduced-fee representation,

or because they fulfill a lawyer's own reputational and societal goals, give the reasonable fee-paying client substantial leverage in negotiating a fee. Accordingly, the claimed hourly rates will be reduced by 65%.

The defendants make certain other challenges to the billing rates charged in this case. The defendants point out that the majority of the work on the plaintiffs' case was performed by two partners charging at partner billing rates, rather than less expensive attorneys. It is appropriate to review with care the distribution of work among attorneys to discover whether a fee requested has been inflated through unnecessary use of highly-compensated counsel. In this case, however, much of the work being done by partners, each of whom is experienced in this type of litigation, appears to have resulted in a net reduction in the overall hours expended on the case, particularly in view of the amount of hours defense counsel expended. There is no basis to find that plaintiffs' counsel staffed the case inefficiently and unreasonably. No further reduction is needed in these circumstances.

Defendants are correct, however, that the services of a paralegal, even if experienced, do not merit a $320/hour billing rate. The Court reduces the claimed rate to $200/hour for the experienced paralegal, and $150/hour for the newer paralegal, prior to the 65% across the board reduction. The other

challenges to the hourly rates have been considered and rejected except as described herein.

## B.  Hours Expended

The second component of the calculation of the presumptively reasonable fee is to calculate the number of hours reasonably expended.  As outlined above, the amount of hours expended by plaintiffs' counsel was generally reasonable. Specific categories of work are addressed below.

### 1.  Duplicative Work

Defendants contend that there was "overlapping" work done by multiple attorneys, such as multiple attorneys drafting motion papers and attending depositions.  In cases such as this one, it is not presumptively unreasonable for multiple attorneys to attend the same deposition or to work on motion papers.  No additional deduction for duplicative work is warranted above the 10% taken by plaintiffs' counsel.

### 2.  Vague or Unintelligible Entries

Defendants next contend that some of the time entries are so vague or unintelligible as to be meaningless.  In the context of the total number of hours expended in this complex case, there are inevitably bound to be some time-entries that are not drafted with an ideal amount of clarity.  The standard, ultimately, is whether the time records submitted permit "a meaningful review of the hours requested."  <u>Restivo v.</u>

Hessemann, 846 F.3d 547, 591 (2d Cir. 2017).  The Court has
reviewed the specific entries challenged by defendants as vague,
and finds that they provide sufficient detail to review the
hours requested.  No further reductions are necessary.

Similar considerations apply to block-billed entries.
Block-billing has been repeatedly criticized, and those
criticisms are particularly appropriate when the party sought to
be held responsible for paying those block-billed entries has
little or no means to understand the distribution of time within
the hours block-billed.  Nonetheless, the block-billing in this
case does not, with very limited exceptions, impede the ability
to review the reasonableness of the work performed.  The Court
declines to make any reductions for block billing.

### 3.  State Law Claims

Defendants criticize plaintiffs' counsel for not deducting
a sufficient number of hours for pleading and defense of the
state law claims.  Having reviewed this issue, this Court
declines to deduct additional hours for the prosecution of the
state law claims.

### 4.  Class Action Allegations

While the defendants argue that this case was not resolved
more expeditiously because of the class action allegations, that
argument is unconvincing.  The defendants did not want to lose
the copyrights in the Song and resisted a settlement of this

litigation that involved abandonment of the copyrights even after the class action claim had been dismissed.  The defendants hoped to achieve review of the summary judgment decision on originality without having to litigate the issues of authorship and fraud.  In an effort to achieve that outcome, they attempted to create the appearance of mootness.  Only after that flawed strategy failed did the defendants abandon all claims to a copyright in the lyrics or melody of the Song.  The class action allegations did not determine the outcome or timing of the settlement.  No further reduction for the inclusion of the class action allegations is necessary.

### 5.  Publicity

Although not challenged by defendants, plaintiffs' counsel have included in their fee requests time spent conversing with media outlets regarding this case, or reviewing the media coverage of this case.  Even if such activities may be in the client's best interest, they are not the type of activities for which the reasonable, hourly fee-paying client would pay this case.  Although there is some authority for awarding fees for speaking to media outlets when the case is a class or collective action in order to reach potential class members, this case was brought as a mandatory class action, and the list of all potential class members would have been in defendants' records.  There was therefore no litigation need to converse with the

media on these facts.  The fee awarded here has been adjusted accordingly.

### C.  Modifications to the Presumptively Reasonable Fee

After calculating the presumptively reasonable fee, courts must be mindful that it is not "'conclusive in all circumstances.'"  Millea, 658 F.3d at 167 (quoting Perdue, 559 U.S. at 553).  Adjustments, however, are "appropriate only in rare circumstances," and cannot include "factors already included in the [presumptively reasonable fee] calculation itself."  Id.  No modification is sought here, and none is warranted.  Accordingly, the presumptively reasonable fee will be awarded in this case.  After rounding, the Court calculates the final fee as $352,000.

### IV.  Expert Fees

Plaintiffs also seek recovery for the fees of their expert witnesses and consultants.  "The Supreme Court has made clear on multiple occasions that, absent explicit statutory authorization, a district court may not award reimbursement for expert fees beyond the allowances authorized by 28 U.S.C. § 1920, as limited by 28 U.S.C. § 1821."  Gortat v. Capala Bros., Inc., 795 F.3d 292, 296 (2d Cir. 2015) (collecting cases).  Section 505 does not explicitly authorize the shifting of witness fees as costs.

Plaintiffs' counsel seek recovery as expenses the fees for an expert musicologist, Dr. E Michael Harrington, D.M.A.  Dr. Harrington was an impressive expert, and his report was of great value to the Court in rendering its Summary Judgment Opinion. Plaintiffs' counsel also seek to recover as expenses the fees for a legal consultant, Prof. Robert Brauneis.  Under the binding authority outlined in <u>Gortat</u>, regardless of an expert's value or the reasonableness of his fees, this Court is without authority to shift the fee to the defendants.

<u>**CONCLUSION**</u>

The February 9, 2018 motion for attorneys' fees and costs is granted to the extent of awarding plaintiffs $352,000 in attorneys' fees.  The determination of certain items of expenses and costs is resolved in an accompanying Order.

SO ORDERED:

Dated:   New York, New York
         July 31, 2018

_____
DENISE COTE
United States District Judge