UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WE SHALL OVERCOME FOUNDATION
and BUTLER FILMS, LLC, on behalf of
itself and all others similarly situated,

                     Plaintiffs,

v.

THE RICHMOND ORGANIZATION, INC.
(TRO INC.) and LUDLOW MUSIC, INC.,

                     Defendants.

C.A. No. 1:16-cv-02725-DLC

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>PLAINTIFFS' MOTION FOR RECONSIDERATION OR REARGUMENT</u>**

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
Mark C. Rifkin
Randall S. Newman
Gloria K. Melwani
Rifkin@whafh.com
Newman@whafh.com
Melwani@whafh.com
270 Madison Ave.
10th Floor
New York, NY  10016
(212) 545-4600

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF CITATIONS ................................................................................................ ii

I. INTRODUCTION .................................................................................................1

II. LEGAL ARGUMENT ............................................................................................2

    A. The Court Correctly Sought to Determine What
       Hourly Rates Would Apply in This Particular Case .............................................2

    B. Plaintiffs' Counsel Were the Only Lawyers Willing
       to Undertake This Litigation on Any Terms .......................................................4

    C. It is Immaterial That Plaintiff WSOF Originally
       Sought Representation for a Different Purpose ....................................................5

    D. The Court Should Consider the Declarations in the Interest of Justice .................8

III. CONCLUSION ....................................................................................................10

# TABLE OF CITATIONS

**CASES**                                                                                                                          **Page(s)**

*Arbor Hill Concerned Citizens Ass'n v. County of Albany*,
   493 F.3d 110 (2d Cir. 2007), *amended on other grounds by*
   522 F.3d 182 (2d Cir. 2008) ...................................................................................................3

*Fredericks v. Chemipal, Ltd.*,
   No. 06 Civ. 966 (GEL), 2007 U.S. Dist. LEXIS 33133 (S.D.N.Y. May 3, 2007) .....................6

*Kiobel v. Cravath, Swaine & Moore LLP*,
   895 F.3d 238 (2d Cir. 2018) ...................................................................................................6

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   136 S. Ct. 1979 (2016) ............................................................................................................9

*Polin v. Wisehart & Koch*,
   No. 00 Civ. 9624 (DLC), 2004 U.S. Dist. LEXIS 17501 (S.D.N.Y. Sept. 3, 2004) ...................7

*Strougo ex rel. Brazil Fund v. Scudder, Stevens & Clark*,
   No. 96 Civ. 2136 (RWS), 1997 U.S. Dist. LEXIS 12243 (S.D.N.Y. Aug. 15, 1997) .................8


**STATUTES & RULES**

Copyright Act,
   17 U.S.C. §§ 101 *et seq.* ...................................................................................................1, 9

Fed. R. Civ. P.,
   1 ................................................................................................................................................9
   59 ..............................................................................................................................................9
   60 ..............................................................................................................................................9

S.D.N.Y. Local Civil Rule 6.3(a) ................................................................................................2, 8, 9

Plaintiffs, We Shall Overcome Foundation ("WSOF") and Butler Films, LLC ("Butler"), hereby submit this Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Reconsideration of the Attorneys' Fee Award.

## I. INTRODUCTION

Defendants' response to Plaintiffs' motion for reconsideration raises a plethora of issues – most of which are hyper-technical objections to the form of the motion – that avoid the merits of Plaintiffs' argument: that in setting the fees for Plaintiffs' Counsel, the Court assumed facts about the availability of counsel to represent Plaintiffs *in this case* on a *pro bono* basis or for a sharply reduced fee that are inconsistent with Plaintiffs' actual experience. As Plaintiffs have shown, their *actual* experience in trying to retain counsel, some of whom declined the case outright and none of whom was willing to undertake the case *pro bono* or for a reduced fee, demonstrates that the Court's assumption about the willingness of attorneys to litigate this copyright dispute was unwarranted. Indeed, before appearing for Defendants in this case, Robins Kaplan LLP agreed to write a letter or two for Plaintiff WSOF but never agreed to commence litigation to challenge the copyrights. That mistaken assumption led the Court to award an unreasonably low fee that undermines the important aims of the Copyright Act.

Defendants' argument that Plaintiffs sought representation for a different claim misses the point entirely. A client does not seek a lawyer knowing how best to analyze and pursue a claim on her behalf any more than a patient sees a doctor knowing how best to diagnose and treat her symptoms. Lay people see lawyers and doctors for their professional judgment, not just their professional service. As Isaias Gamboa explained in his declaration, none of the lawyers with whom he consulted before retaining Plaintiffs' Counsel to represent him in this case – including counsel who eventually represented the Defendants in the litigation – proposed any strategy for Plaintiffs to pursue after declining to sue Defendants to establish Louise Shropshire's

contribution to the Song. Plaintiffs' Counsel, whom Mr. Gamboa similarly approached to prove Mrs. Shropshire's authorship, were the *only* lawyers who proposed a strategy to invalidate Defendants' copyrights, which eventually proved entirely successful. None of the ten lawyers and law firms whom Mr. Gamboa consulted before turning to Plaintiffs' Counsel so much as proposed a litigation strategy to him, much less offered to undertake such complex and difficult litigation on a *pro bono* basis or for a reduced fee. And none of the other lawyers offered to foot the bill for an expert to prevail on the complex copyright dispute.

To the extent that Plaintiffs' motion for reconsideration is subject to the requirements of Local Civil Rule 6.3(a), Plaintiffs respectfully seek permission *nunc pro tunc* to file the declarations. Defendants have responded to the declarations in their opposition brief. Defendants have not been unfairly prejudiced in any way by the declarations – they do not even claim prejudice – and they have neither filed nor sought permission to file their own declarations in response. In the interest of justice, the Court should accept the declarations and consider them in deciding the motion for reconsideration.

**II.     LEGAL ARGUMENT**

    **A.     The Court Correctly Sought to Determine
            What Hourly Rates Would Apply in This Particular Case**

In cutting the regular hourly rates of Plaintiffs' Counsel by 65%, the Court assumed that "[a]ny reasonable, hourly fee-paying client choosing to bring this case, would likely have found *pro bono* or reduced fee representation to take on this action." Dkt. No. 164 at 20. However, that was not the case here. Before seeking out Plaintiffs' Counsel to represent Plaintiff WSOF in the case, Mr. Gamboa consulted at least ten different lawyers and law firms – including the firm that now represents the Defendants – ***none of whom were willing to litigate this copyright dispute on a* pro bono *or reduced-fee basis***. Dkt. No. 168 at ¶¶ 26, 28, 31 & 34. As Mr. Gamboa's

experience shows, this was not a case for which a reasonable, hourly fee-paying client would have found *pro bono* or reduced fee representation.

Defendants argue that the Court should not be concerned about Mr. Gamboa's experience in trying to retain counsel ***in this case***. Apparently, Defendants believe the fee should have been set by reference to a vague and undifferentiated market for legal services generally. Since Plaintiffs' motion for reconsideration is addressed to the particular circumstances of this case, Defendants argue, it is legally irrelevant. Defendants' argument is plainly flawed.

In its Fee Opinion, the Court correctly set forth the legal standard for considering the fee application: "The inquiry *Arbor Hill* demands, however, is to determine the rate a reasonable, hourly-fee paying client would be willing to pay ***in the circumstances of a particular case***." Dkt. No. 164 at 19 (citing *Arbor Hill Concerned Citizens Ass'n v. County of Albany*, 493 F.3d 110, 118 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008)) (emphasis added). As *Arbor Hill* makes clear, the question is not what some hypothetical client might be willing to pay to a hypothetical lawyer in ***any*** case, but rather what fee a reasonable fee-paying client would expect to pay for the case in question. In *Arbor Hill*, the Second Circuit said it was setting forth the factors the Court should consider "in calculating the reasonable hourly rate ***for particular legal services***." 522 F.3d at 184-85 n.2 (emphasis added).[1]

Defendants' argument that the Court should reduce the hourly rates claimed by Plaintiffs' Counsel based upon some hypothetical, generalized market for legal services untethered to this particular case is unsupported by any relevant authority, is contrary to the Second Circuit's

---

[1] Indeed, the Court based its assumption about the availability of *pro bono* or reduced-fee representation upon its understanding of the unique appeal of ***this particular case***: "plaintiffs' counsel obtained substantial publicity and reputational benefits for themselves by bringing and prevailing ***in this case***. The Song is of historical importance, and many wished to see it returned to the public domain." Dkt. No. 164 at 20 (emphasis added).

3

holding in *Arbor Hill*, and is inconsistent with the legal standard set forth in the Court's Fee Award. The Court need not reconsider the applicable legal standard governing the Fee Award.

### B. Plaintiffs' Counsel Were the Only Lawyers Willing to Undertake This Litigation on Any Terms

The "particular legal services" in question here are the litigation services provided by Plaintiffs' Counsel in this case. Indeed, the Court based its assumption about the availability of *pro bono* or reduced-fee representation upon its understanding of the supposedly unique appeal of this particular case: "plaintiffs' counsel obtained substantial publicity and reputational benefits for themselves by bringing and prevailing in this case. The Song is of historical importance, and many wished to see it returned to the public domain." Dkt. No. 164 at 20 (emphasis added). While the successful outcome of the case was especially gratifying to Plaintiffs' Counsel because of the Song's historical and cultural importance, the importance of the Song did not attract a well-spring of qualified counsel offering to litigate an expensive copyright dispute. Indeed, as Mr. Gamboa attested, Plaintiffs' Counsel were the only lawyers willing to undertake this litigation on any terms.

Defendants' counsel and the ten lawyers and law firms whom Mr. Gamboa consulted before seeking out Plaintiffs' Counsel to represent WSOF never offered to provide those services to Plaintiffs *pro bono* or for a reduced fee. Indeed, they never offered to provide those services at all. Mr. Gamboa's experience with Robins Kaplan, which represents the Defendants in this action, is a pertinent example. Yakub Hazzard, Esquire, of Robins Kaplan agreed to write a letter on behalf of Mr. Gamboa and Mr. Shropshire, but when Defendants rejected his demand that Mrs. Shropshire be recognized for her contribution to the Song, Mr. Hazzard and Robins Kaplan ended their limited representation without commencing litigation. Dkt. No. 168 at ¶ 24. Even though they had received the Ferrara Report, which admitted that Defendants' copyrighted

4

version of the Song was "virtually the same" as the public domain version previously published by PSI, Mr. Hazzard and Robins Kaplan were unwilling to litigate the Song's copyrights. *Id*. at ¶ 25. They ended the representation without advising Mr. Gamboa or Mr. Shropshire on any strategy for invalidating the Song's copyrights. *Id*. at ¶ 26.

Like Mr. Hazzard and Robins Kaplan, whose *pro bono* undertaking was limited to letter-writing, Randall S. Newman, Esquire, also agreed as a courtesy to Mr. Gamboa to write a single letter on behalf of Plaintiff WSOF to obtain a compulsory license from Defendant Ludlow. Dkt. No. 169 at ¶ 4. However, Mr. Newman's offer to write a short letter as a "courtesy" was not an undertaking to conduct the litigation on a *pro bono* basis, any more than Mr. Hazzard and Robins Kaplan agreed to do so when they wrote their letter for Mr. Gamboa and Mr. Shropshire.

The supply of counsel supposedly willing to litigate the Song's copyrights for Plaintiffs on a *pro bono* basis or for a reduced fee did not exist. Because the assumption upon which the Court relied to cut Plaintiffs' Counsel's hourly rates by 65% was mistaken, the Court should reconsider its Fee Opinion. Only Plaintiffs' Counsel proposed a winning litigation strategy to Mr. Gamboa, and only they undertook to implement it – and did so on a contingent fee basis. In light of these undisputed facts now before the Court, at an absolute minimum, Plaintiffs' Counsel should not have their hourly rates cut by more than Defendants' counsel agreed to discount their own hourly rates, especially since Defendants' counsel billed nearly twice as many hours in a losing effort as Plaintiffs' Counsel billed in winning the case and they were paid on a current basis (including the expenses of the so-called experts they retained) during the litigation.

### C. It is Immaterial That Plaintiff WSOF Originally Sought Representation for a Different Purpose

Defendants make much of the fact that Plaintiff WSOF originally sought representation for a different purpose. When Mr. Gamboa contacted Plaintiffs' Counsel to represent Plaintiff

5

WSOF, as he had done with the ten other lawyers and law firms he contacted before doing so, it was to pursue a claim to gain recognition for Mrs. Shropshire's contribution to the Song. *See* Dkt. Nos. 168 ¶¶ 30-31 and 169 ¶¶ 3-5. The fact that Mr. Gamboa did not know the proper legal strategy to pursue to achieve his primary aim – to undo Defendants' invalid copyright claim and return the Song to the public domain – is immaterial. A client does not seek a lawyer knowing how best to analyze and pursue a claim on her behalf any more than a patient sees a doctor knowing how best to diagnose and treat her symptoms. Lay people see lawyers and doctors for their professional judgment, not just their professional services.

As Isaias Gamboa explained in his declaration, before he retained Plaintiffs' Counsel to represent him in this case, none of the other lawyers with whom he consulted – including counsel who eventually represented the Defendants in the litigation – proposed any strategy for Plaintiffs to pursue. After declining to sue Defendants to establish Louise Shropshire's contribution to the Song, all ten of those other lawyers and law firms simply ended their inquiry and sent Mr. Gamboa away. While it was understandable from a business perspective that none of those lawyers or law firms would agree to undertake litigation over the disputed copyrights at all or would do so only an hourly basis with a hefty retainer (*see* Dkt. No. 168 ¶¶ 13 & 32), they could and should have advised Mr. Gamboa of potentially meritorious claims instead of just sending him on his way.

As the Second Circuit recently noted in *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 247 (2d Cir. 2018), clients seek out the advice of lawyers in order to understand their options. Accordingly, an attorney has an obligation to advise her client whether to pursue a given course of action. *Fredericks v. Chemipal, Ltd.*, No. 06 civ. 966 (GEL), 2007 U.S. Dist. LEXIS 33133, at *27 (S.D.N.Y. May 3, 2007) (citing *Spector v. Mermelstein*, 361 F. Supp. 30, 39-40

6

(S.D.N.Y. 1972)). In meeting her professional duties to a client, a lawyer must give the client all information necessary for the client to make an informed decision what course of action to pursue. *See Polin v. Wisehart & Koch,* No. 00 civ. 9624 (DLC), 2004 U.S. Dist. LEXIS 17501, at *15-16 (S.D.N.Y. Sept. 3, 2004) (Cote, J.) (quoting *Spector v. Mermelstein*, 361 F. Supp. 30, 40 (S.D.N.Y. 1972), *aff'd in relevant part*, 485 F.2d 474 (2d Cir. 1973)) (attorney may be found liable for malpractice by failing to conduct adequate legal research or inform himself about case in order to suggest appropriate course of conduct to client).

None of the lawyers whom Mr. Gamboa consulted before retaining Plaintiffs' Counsel, including Robins Kaplan, advised him whether to bring suit to invalidate the Song's copyrights (or, apparently, even considered such a strategy). At most, they only considered Mr. Gamboa's narrow request about trying to prove Mrs. Shropshire's contribution to the Song. Because they never considered or advised Mr. Gamboa about litigating the copyrights, none of the ten lawyers and law firms he consulted before contacting Plaintiffs' Counsel ever offered to bring such an action, and they certainly never offered to do so *pro bono* or for reduced fees (with the lawyer also agreeing to pay the cost of a qualified expert to provide testimony in support of the claim).

Plaintiffs' Counsel, whom Mr. Gamboa similarly approached to prove Mrs. Shropshire's authorship, *see* Dkt. No. 169 ¶ 3-4, were the ***only*** lawyers who proposed a strategy to invalidate Defendants' copyrights, which eventually proved successful. And Plaintiffs' Counsel were the ***only*** lawyers willing to undertake such complex and difficult litigation on a contingent fee basis – or, indeed, on anything other than a full hourly basis (if they were willing to do so at all). Dkt. No. 168 ¶¶ 31-32. One of the lawyers whom Mr. Gamboa consulted before retaining Plaintiffs' Counsel estimated that fees could easily top $500,000. *Id.* at ¶ 27.

As the evidence now before the Court makes clear, after letter-writing proved

7

unsuccessful, *only* Plaintiffs' Counsel proposed a litigation strategy to advance Plaintiffs' interests and protect their rights. None of the lawyers whom Mr. Gamboa contacted before retaining Plaintiffs' Counsel agreed or even offered to do so except on a full hourly-fee basis. None of the lawyers whom Mr. Gamboa contacted before retaining Plaintiffs' Counsel proposed a litigation strategy or offered any advice to Mr. Gamboa regarding the invalidity of Defendants' copyrights.[2]

### D. The Court Should Consider the Declarations in the Interest of Justice

Local Civil Rule 6.3(a), which applies to motions for reconsideration or reargument, provides that "[n]o affidavits shall be filed by any party unless directed by the Court." Defendants argue that the declarations in support of Plaintiffs' motion for reconsideration were not submitted in strict compliance with Local Rule 6.3(a) because Plaintiffs did not seek or receive permission to file them before doing so.

Plaintiffs did not move for reconsideration or reargument under Local Rule 6.3 because it is not clear that the Local Rule applies to this motion. Local Civil Rule 6.3 requires the movant to "demonstrate that the Court overlooked controlling decisions or factual matters put before it on the underlying motion." *Strougo ex rel. Brazil Fund v. Scudder, Stevens & Clark*, No. 96 Civ. 2136 (RWS), 1997 U.S. Dist. LEXIS 12243, at *8-9 (S.D.N.Y. Aug. 15, 1997) (citations omitted). Therefore, a party moving under Local Rule 6.3 "'may not advance new facts, issues or arguments not previously presented to the court.'" *Id.* (quoting *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, No. 86 Civ. 6447 (JMC), 1989 U.S. Dist. LEXIS 9145, at *10 (S.D.N.Y. Aug. 4, 1989)).

Because Plaintiffs rely upon new facts about the unavailability of counsel to represent

---

[2] Mr. Hazzard and Robins Kaplan failed to do so even after they received the Ferrara Report, which provided a factual basis to invalidate the copyrights.

8

them in this case on a *pro bono* or reduced fee basis that were not previously presented to the Court, they did not move under Local Rule 6.3. Instead, they moved for reconsideration under Federal Rules of Civil Procedure 59 and 60, which do not have similar limitations. Accordingly, they did not seek the Court's permission to submit the declarations before filing their motion, because Rules 59 and 60 do not require them to do so.

If and to the extent the Court deems Plaintiffs' motion for reconsideration to be subject to Local Rule 6.3(a), Plaintiffs respectfully request that the Court accept the declarations *nunc pro tunc*. The declarations provide important factual detail which helps inform the Court about the market for legal services ***for this particular case***. Without that information, the Court assumed that competent counsel were readily willing to represent Plaintiffs in this case on a *pro bono* basis or for a sharply reduced fee. That assumption is inconsistent with Plaintiffs' actual experience retaining counsel to represent them.

The Rules of Civil Procedure are to be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. In the interest of justice, the Court should construe and apply Rules 59 and 60 and Local Rule 6.3(e) liberally to consider the motion for reconsideration on the basis of a full factual record. The motion raises issues that will guide counsel in future cases. Litigation of this kind unquestionably serves one of the important purposes of the Copyright Act. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526-27 (1994)) (fee awards under Section 505 should encourage the kind of lawsuits that promote the twin aims of the Copyright Act). Qualified counsel no longer may be willing to undertake such important litigation if they cannot expect to be fairly compensated for their services.

9

Defendants have not claimed any unfair prejudice from the declarations. They could have sought permission to submit their own declarations in response, but they did not do so (or even seek permission to do so).

## III. CONCLUSION

For these additional reasons, Plaintiffs request reconsideration of the Fee Award.

Dated: September 13, 2018

Respectfully submitted,

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP

By:    s/ Mark C. Rifkin
Mark C. Rifkin
Randall S. Newman
Gloria K. Melwani
Rifkin@whafh.com
Newman@whafh.com
Melwani@whafh.com
270 Madison Ave.
10th Floor
New York, NY 10016
(212) 545-4600

*Attorneys for Plaintiffs*